**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA *ex rel.*
JOHN DOE,

|  |  |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -against- | CV 10-4819 (LDW) (AKT) |
| ACUPATH LABORATORIES, INC., | |
| Defendant. | |

------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    PRELIMINARY STATEMENT

The "John Doe" plaintiff ("Relator") commenced this *qui tam* action on behalf of the

United States against Acupath Laboratories, Inc. ("Acupath" or "Defendant").  Relator alleged

violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, in connection with violations of the

Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), as well as the submission of false claims for

payment to the Medicare Program.  The United States, the Relator, and the Defendant then

entered a settlement agreement with respect to these claims.  *See* Stipulation and Order, [Docket

Entry ("DE") 22].  Relator's counsel ("Relator's counsel" and/or "Relator's attorneys"),

subsequently filed a motion to recover attorneys' fees and costs from defendant Acupath.  *See*

[DE 28].  Defendant opposes the motion, contending that (1) the hourly rates claimed by

Relator's attorneys are excessive, (2) Relator's attorneys' fees are unreasonable, and

(3) Relator's counsel achieved limited success.  *See* [DE 31].  In addition to its opposition,

Acupath has cross-moved for its own attorneys' fees related to the present motion.  *Id.*  Judge

Wexler has referred these matters to this Court for a Report and Recommendation as to whether

the motions for attorney's fees should be granted, and, if so, the amounts to be awarded.  *See* 7/22/2014 Order Referring Case.

For the reasons set forth below, the Court respectfully recommends to Judge Wexler that Relator's motion for attorneys' fees and costs be GRANTED, to the extent set forth in this Report and Recommendation and that Defendant's cross-motion for attorneys' fees be DENIED.

## II.  BACKGROUND

### A.  Relevant Procedural History

On October 20, 2010, Relator, on behalf of the United States, commenced a *qui tam* action alleging violations of the False Claims Act ("FCA") in connection with the Anti-Kickback Statute ("AKS") and Medicaid fraud.  *See* Complaint (hereafter, "Compl.") ¶¶ 1-3, [DE 1].  The *qui tam* claims were resolved pursuant to a settlement agreement calling upon defendant to pay the United States $165,000, and the United States to pay Relator $31, 350.  Declaration of Jeffrey J. Sherrin ("Sherrin Decl."), Ex. C, [DE 29-3].  Thereafter, the parties entered into a stipulation (1) discontinuing with prejudice all claims encompassed in the Covered Conduct paragraphs of the Settlement Agreement, and (2) dismissing all the remaining claims brought by the Relator on behalf of the United States, with prejudice as to Relator, and without prejudice as to the United States.  *See* [DE 22].  Further, the Court retained jurisdiction over Relator's claims for attorneys' fees, *id.*, and the parties entered into a briefing schedule.  *See* [DE 25].

### B.  Relator's Motion for Attorney's Fees and Costs

By Notice of Motion dated May 21, 2014, Relator's counsel moved the Court, pursuant to the FCA, 31 U.S.C. § 3730(d), for $121,268.75 in attorneys' fees and $1,890.44 in costs, plus interest against Defendant.  Relator's Mot. for Award of Attys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d) ("Rel.'s Mot.") [DE 28] at 2.  Relator also moved the Court for $48,817.50

in attorneys' fees and $161.30 in expenses incurred in preparing and litigating the instant application.  Reply Mem. of Law in Further Support of Relator's Motion for Award of Attys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d) ("Reply Mem.") [DE 30] at 2.  While Defendant does not contest that Relator's attorneys are entitled to reasonable attorneys' fees, Defendant does oppose the amount of the fees on a number of grounds.  *See* Def.'s Mem. of Law in Opp'n to Relator's Mot. For Attys' Fees and Expenses and in Support of Cross-Mot. ("Def.'s Opp'n") [DE 31] at 1.

First, Defendant contends that the hourly rates claimed by Relator's attorneys are excessive because:  (a) Relator's attorneys fail to demonstrate that an exception to the forum rule is appropriate; (b) Relator's attorneys do not rise to the level of skill, ability, or experience to warrant such high fees; and (c) Relator's attorneys fail to provide adequate justification for the requested rates.  *Id.* at 3-11.  Second, Defendant argues that the Court should reduce the requested fee amount for counsels' excessive and unnecessary billing, including a percentage reduction for block billing and vague entries.  *Id.* at 12-20.  Third, Defendant maintains that a reasonable paying client would not pay $121,268.75 in attorneys' fees in light of Relator's limited degree of success, since the defendant settled one claim with the Government for a modest amount, without any admissions, and without any corporate integrity agreement required.  *Id.* 21-23.  Fourth, Defendant asserts that the costs requested by Relator's attorneys be reduced due to the vague descriptions supplied.  *Id.* at 23.  Fifth, Defendant argues that the Relator's attorneys' fees concerning the present motion are unreasonable.  *Id.* at 24.  Sixth, Defendant contends that the Relator has failed to show entitlement to fees for services rendered by two prior law firms, nor has Relator shown that current counsel are entitled to receive those funds.  *Id.* at 24-25.

Finally, Defendant cross-moves to recover $29,525 in attorneys' fees related to the instant application, arguing that because Relator's attorneys have failed to meet their burden in demonstrating that the fees sought are reasonable, Defendant was forced to defend against this motion and should be awarded the fees it incurred as a result. *Id.* at 25-26.

Relator filed a reply in response to Defendant's opposition arguing that Relator's attorneys' rates and costs are reasonable because of the attorneys' breadth of experience in litigating False Claims Act cases. Reply Mem. at 5. Relator's counsel further maintains that the firm does not charge differing rates between the Eastern and Southern Districts of New York, and that the firm has recovered its requested fees in the past in Eastern District of New York cases. *Id.* at 3-4. Next, Relator's attorneys assert that the fees are not unreasonable because the law does not require attorneys' fees and costs to be proportional to the damages recovered. *Id.* at 5-6. In addition, Relator's counsel claims that the time spent on this action was not excessive due to the "difficult, novel, and complex" nature of this matter which needed "creative, expansive and comprehensive research," that helped procure the intervention of the Government and ultimately the settlement of the case. *Id.* at 9. Relator's attorneys also argue that the majority of the time billed is not blocked and the hours that are block-billed pertain to completely intertwined and specific tasks which were so interrelated that breaking them down separately would be inefficient. *Id.* at 10. The contemporaneous timekeeping records filed with the Court are neither vague nor excessive according to Relator's counsel. *Id.* at 11-12. Rather, the records appropriately detail the time expended on tasks necessary to the litigation. *Id.* However, Relator's counsel submits that to the extent that the Court finds any entries to be vague, a reduction of 10% of such time is equitable. *Id.* at 12. Relator's attorneys submit

4

Defendant is correct in that some the time incurred was incorrectly billed, and that two hours of time totaling $760 was billed to the wrong client.  *Id.* at 12.  Moreover, the $1,887.86 requested in expenses were incurred, Relator asserts, solely in this matter and do not constitute overhead. *Id.*  Counsel has sworn or declared under penalty of perjury that such expenses were legitimately incurred.  *Id.*  Relator's counsel provides declarations from previous counsel indicating that Sadowski Fischer is entitled to collect fees and costs incurred by predecessor Attorneys Jeffrey A. Udell and Richard I. Janvey.  *Id.* at 13.  Finally, Relator's attorneys claim that defendant's cross-motion for attorneys' fees and costs incurred for its response to the instant application is unreasonable and vexatious and has consequently caused Relator's counsel fees to multiply due to the need to defend its application.  *Id.* at 13-16.

Defendant submitted a sur-reply, claiming, *inter alia*, that (1) the reply papers of Relator's counsel did not contest that the Complaint itself was factually devoid and failed to meet federal pleading standards, (2) the majority of Relator's time entries are still too vague to support payment, and (3) the billing records are replete with entries which, without context, seem unrelated to the litigation.  Sur-Reply Decl. of Jeffrey J. Sherrin ("Sherrin Sur-Decl.") [DE 34] ¶ 4.  Defendant also contests the assertion of Relator's counsel that it was Defendant who drove up fees and costs and necessitated the instant application because of its unwillingness to negotiate.  *Id.* ¶ 5.  Defendant further asserts that the claims presented by Relator's counsel were "anything but novel" and were, in fact, "commonplace."  *Id.* ¶¶ 13-15.

## III.   LEGAL STANDARD

In any action in which a *qui tam* plaintiff receives an award, 'such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such expenses, fees, and costs shall be

awarded against the defendant."  31 U.S.C. § 3730(d)(1); *see also* New York False Claims Act

("NYFCA"), New York State Fin. Law § 191.  When exercising their discretion to determine the

reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee"

standard.  *Arbor Hill v. Cnty. of Albany and Albany Cnty. Bd. of Elections,* 522 F.3d 182, 190 (2d

Cir. 2008).

 Both the Second Circuit and the Supreme Court "have held that the lodestar—the product

of a reasonable hourly rate and the reasonable number of hours required by the case—creates a

'presumptively reasonable fee.'"  *Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 166 (2d Cir.

2011) (quoting *Arbor Hill,* 522 F.3d at 183).  "The reasonable hourly rate is the rate a paying

client would be willing to pay." *Arbor Hill,* 522 F.3d at 190.  "[W]hether the calculation is

referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-

specific factors to help determine the reasonableness of the hourly rates and the number of hours

expended."  *Pinzon v. Paul Lent Mech. Sys.,* No. 11 Civ. 3384, 2012 WL 4174725, at *5

(E.D.N.Y. 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors

include:

> [T]he complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively (taking account of the
> resources being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client)
> in achieving the ends of the litigation or might initiate the
> representation himself, whether an attorney might have initially
> acted pro bono (such that a client might be aware that the attorney
> expected low or non-existent remuneration), and other returns
> (such an reputation, etc.) that an attorney might expect from the
> representation.

*Arbor Hill,* 522 F.3d at 184.  While the Court may adjust the lodestar calculation, adjustment

should only be in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010).

In addition, to determine whether the number of hours spent by Relator's counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. 03 Civ. 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). An award of attorney's fees may be greater than a plaintiff's damages award or settlement recovery, since "reasonable attorney's fees . . . are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera,* 477 U.S. 561, 576 (1986); *Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012) ("we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation") (internal quotations and citations omitted).

The party seeking reimbursement of attorney's fees "must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). A party seeking an award bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal

7

assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted); *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) ("all applications for attorney's fees [are to] be supported by contemporaneous records") (internal citations omitted); *Carey,* 711 F.2d at 1147.

## IV.   <u>ANALYSIS</u>

### A.   **Attorneys' Fees**

Relator's counsel seeks to recover attorneys' fees for services rendered in this matter by four attorneys associated with the law firm of Sadowski Fischer PLLC ("Sadowski Fischer"). Decl. of Robert W. Sadowski ("Sandowski Decl.) [DE 28-1] ¶¶ 1, 3, 10, 13-14.  Specifically, Relator seeks to recover fees for hours billed by:  (1) Robert W. Sandowski, Esq., (2) Raphael Katz, Esq., (3) Andrea Fischer, Esq., and (4) Audrey Hildes Schechter, Esq., of Counsel to Sadowksi Fischer and admitted only in Florida.  *Id.* ¶¶ 10, 13-14.  It should be noted that although the lawyers have remained involved throughout the litigation, the firms for which they worked have changed.  From 2010 through early 2013, Mr. Sadowski, Mr. Katz and Ms. Fischer, worked for Diamond McCarthy LLP ("DM").  Decl. of Richard I. Janvey ("Janvey Decl." [DE 30-4] ¶ 3.  Prior to 2010, Mr. Sadowski, Mr. Katz, and Ms. Fischer were associated with Olshan Frome Wolosky LLP ("Olshan").  Decl. of Jeffrey A. Udell ("Udell Decl.") [DE 30-5] ¶ 3.  Both DM and Olshan have authorized Attorney Sadowski to pursue the collection of the fees and expenses on their behalf, and have further authorized the payment of the fees and expenses into Sandowski Fischer's escrow account, on their behalf.  Janvey Decl. ¶ 9; Udell Decl. ¶ 7.   In the original moving papers, Relator sought a total of $121,268.75 in attorneys' fees for over 253 hours of litigation time spanning a period of more than four years.  Rel.'s Mot. at 1.  In the reply, Relator's counsel asserts that her firm has incurred an additional $48,817.50 in fees since April

16, 2014, as a result of preparing the instant motion and responding to Defendant's cross-motion. Decl. of Andrea Fischer ("Fischer Decl.") [DE 30-1] ¶ 6.

As noted, Defendant opposes the motion on a number of grounds. First, Defendant argues that the hourly rates proposed by the Relator's counsel are unreasonable in the context of current Eastern District cases. Moreover, Defendant maintains that time records of Relator's attorneys are vague and reflect excessive and unnecessary billing. Defendant seeks a percentage reduction for block billing and vague entries. Finally, Defendant has cross-moved for attorneys' fees in defending against the instant motion.

In reply, Relator's counsel disputes Defendant's characterizations of the timekeeping entries, arguing that both the hourly rate and the hours expended researching and drafting the Complaint were reasonable. As noted above, Relator's counsel has requested an additional $48,817.50 in fees for the 70.7 hours counsel claims were expended on preparing the instant application. Finally, Relator's attorneys maintain that Defendant's cross-motion for attorneys' fees is unreasonable. With this information in hand, the Court now turns to an assessment of the specific billing records.

### 1.    *Reasonable Hourly Rates*

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983); *see also Joseph v. HDMJ Restaurant, Inc.,* 970 F.Supp.2d 131, 155-56 (E.D.N.Y. 2013) (internal citations omitted); *Pinzon*, 2012 WL 4174725, at *5. In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York

range from approximately $300 to $400 per hour. *Konits v. Karahalis,* 409 Fed.Appx. 418, 422–23 (2d Cir. 2011) (summary order); *Claudio v. Mattituck–Cutchogue, Union Free Sch. Dist.,* No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases). Some "[c]ourts have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Small v. New York City Transit Auth.,* No. 09 Civ. 2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (internal quotations omitted). Counsel's hourly rates are generally "in line with those market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998).

Relator's counsel has provided declarations outlining the professional qualifications of the four attorneys who performed work in this case. Attorney Robert Sadowski is a Senior Partner at Sadowski Fischer PLLC. *See* Sadowksi Decl. ¶ 1. He received his law degree from Brooklyn Law School, and an L.L.M. in Taxation from NYU Law School, and has been litigating complex cases for over 25 years. *Id.* ¶ 9. Attorney Sadowski previously served as Health Care Fraud Coordinator in the United States Attorney's Office for the Southern District of New York, where he was responsible for supervising all civil health care fraud prosecutions in that office. *Id.* ¶ 9. He also supervised the investigation, litigation, and settlement of fraud prosecutions under the False Claims Act. *Id.* ¶ 9. In addition to Medicare and Medicaid fraud cases, Mr. Sadowksi prosecuted Stark violations, kickbacks, cost report improprieties, false billings, quality of care failures and drug safety violations. *Id.* ¶ 9. Attorney Sadowski requests that the Court approve an hourly rate for him ranging from $575 at the outset of this case, to his current hourly rate of $850. *Id.* ¶ 7. Mr. Sadowski contends that these rates fit within the range

10

of attorneys' hourly rates for similar representation in False Claims Act cases within the Eastern and Southern Districts of New York.  *Id.* ¶ 7.

Attorney Raphael Katz is a partner at Sadowski Fischer, and a graduate of Emory University School of Law, and has been litigating *qui tam* cases since 2006.  Supp. Decl. of Raphael Katz ("Katz Decl.") [DE 30-2] ¶ 2.  He is a member of the national bar for relator's counsel, and, in 2013, was selected as a Rising Star Super Lawyer for the New York Metro Region.  Sadowski Decl. ¶ 9.  Attorney Katz seeks reimbursement at the hourly rate of $350 for 2010, $425 for 2011, $500 for 2012, and $600 for 2013-2014.  Rel. Mem. at 9 fn. 10.

Attorney Andrea Fischer is a partner with Sadowski Fischer and has over 22 years of experience handling complex litigation.  Sadowski Decl. ¶ 13.  Ms. Fischer's work on this matter consisted of negotiating the fees and drafting the instant application.  Decl. of Andrea Fischer ("Fischer Decl.") [DE 30-1] ¶ 8.  Attorney Fischer's expertise in fee applications is asserted to be based on her handling bankruptcy fee applications for three firms with which she was affiliated, as both an associate and partner.  *Id.* ¶ 8.  Attorney Fischer requests that this Court approve an hourly billing rate of $750.  Sadowski Decl. ¶ 13.

Attorney Audrey Hildes Schechter is "of counsel" to Sadowski Fischer and performed the bulk of the post-settlement motion practice.  Sadowski Decl. ¶ 14.  While Ms. Schechter is not admitted to the New York bar, she has been admitted to the bar of the State of Florida since 1992.  Decl. of Audrey Hildes Schechter ("Schechter Decl.") [DE 30-3] ¶ 2.  Attorney Schechter has litigated complex commercial litigation matters for over 20 years and has drafted a number of *qui tam* complaints.  *Id.* ¶ 5.  Attorney Schechter requests an hourly rate of $650.  Sadowski Decl. ¶ 14.

11

Relator's counsel does not dispute that the rates charged are higher than those customarily charged in the Eastern District of New York and notes that Sadowski Fischer does not charge differing rates between the Eastern and Southern Districts.  Relator refers to an award of attorneys' fees granted in *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co., et al.*, Master File No. 06-MD-1738 (BMC)(VO), No. 05 Civ. 453, 2013 U.S. Dist. LEXIS 182701 (E.D.N.Y. Dec. 30, 2013), *rev'd on other grounds*, 995 F. Supp. 2d 125 (2d Cir. 2014), as a basis to overcome the presumption of adhering to local rates due to the complexities of the case.  Relator has also submitted and the Court has considered the Declaration of Richard F. Bernstein, Esq., annexed as Ex. 1 to the Declaration of Timothy H. McInnis, Esq., as well as Attorney McInnis' Declaration.  These Declarations from attorneys practicing in the area of *qui tam* litigation outline the risks of such litigation and support the Relator's position concerning the reasonableness of the hourly billing rates sought by counsel in the instant motion.

In *Simmons*, 575 F.3d at 170, the Second Circuit defined how prevailing rates in the district should be considered in determining the rates to award counsel from outside the district. The Court of Appeals held that:

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome the presumption a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.

*Id.* at 175-76.

12

As to Relator's reliance on *Hebei*, Judge Cogan, in discussing the presumption in favor of the forum rule, noted that the case contained "factual and legal issues…that have never been considered in this district and very possibly would be unique anywhere." *Hebei*, 2013 U.S. Dist. LEXIS at \*12. *Hebei* was a multi-district, seven year-long antitrust action, which included:

> a substantive brief by the People's Republic of China which defendants sought to elevate to near-evidentiary weight; the act of state doctrine as applied to a foreign regulated industry; sovereign immunity of private actors asserting their control by a foreign governmental agency; extensive Chinese documents that had to be translated with concomitant disputes over the accuracy of the translations; the last-minute designation of a key former Chinese employee whose retirement suddenly released him from his previously asserted sovereign immunity in order to testify; depositions in China; [and] analysis of Chinese law.

*Id.* at \*13. Plaintiffs in *Hebei* ultimately prevailed in obtaining a judgment of over $153,300,000. *Id.* at \*9. They sought $13,724,641.75 in attorneys' fees, of which Judge Cogan awarded $4,093,163.35. *Id.* at \*9-10. The fees awarded ranged from "$375 per hour for junior associates to $980 per hour for senior partners." *Id.* at \*11.

While False Claims Act actions may be a more complex area of litigation, this particular case does not compare to the magnitude of the representation undertaken in *Hebei*. *Hebei* involved novel and complex issues that even Judge Cogan noted were "unlike the more typical antitrust class action." *Hebei*, 2013 U.S. Dist. LEXIS at \*18. The underlying claims in the instant action are based on allegations of fraud in the payment of funds disbursed under the Medicare and Medicaid Programs. Compl. at 1.

The so-called "*Johnson* factors" are among the case-specific considerations that a court must assess when determining a presumptively reasonable fee. *Arbor Hill*, 522 F.3d at 190; *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 110 (E.D.N.Y. 2013) (citing *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). They are:

| | | |
|---|---|---|
| (1) | the time and labor required; |
| (2) | the novelty and difficulty of the questions; |
| (3) | the level of skill required to perform the legal services properly; |
| (4) | the preclusion of employment by the attorney due to acceptance of the case; |
| (5) | the attorney's customary hourly rate; |
| (6) | whether the fee is fixed or contingent; |
| (7) | the time limitations imposed by the client or the circumstances; |
| (8) | the amount involved in the case and the results obtained; |
| (9) | the experience, reputation and ability of the attorney; |
| (11) | the nature and length of the professional relationship with the client; and |
| (12) | awards in similar cases. |

*Gagasoules*, 296 F.R.D. at 110 (omission of the tenth factor, the "undesirability" of the case, in original).

Relator's counsel argue that the following hourly rates are justified by the novelty and difficulty of the legal questions involved, the level of skill required to perform the work properly, and the experience and reputation of the attorneys: for Robert Sadowski, $575 in 2010, $600 in 2011, $700 in 2012, $850 in 2013 and 2014; for Raphael Katz, $350 in 2010, $500 in 2011 and 2012, and $600 in 2013 and 2014; for Andrea Fischer, $750 in 2013 and 2014; and for Audrey Schechter, $650 per hour for 2013 and 2014. Rel. Mem. at 9 fn. 10. Defendant counters that there were no novel or difficult legal questions presented and the quality of the Complaint was lacking. Def.'s Opp'n 4-11. Defendant suggests alternative hourly rates as follows: (1) for Robert Sadowski, $325 in 2010, and $400 from 2011-2014, and (2) for Raphael Katz, $175 in 2010 and $225 for 2011-2014. *Id.* at 11. Defendant contends that Andrea Fischer's hourly rate

should be, at most, $350, and that no rate should be accorded to Audrey Hildes Schechter, who is not admitted to practice in New York.  *Id.* at 11.

While Relator's counsel maintain that this case was factually complex and presented unique legal issues, it has been noted that Medicaid fraud is a typical kind of fraud covered by the FCA and the NYFCA.  *See United States ex rel. Krause v. Eihab Human Servs.*, No. 10 Civ. 898 (RJD) (SMG), 2014 U.S. Dist. LEXIS 136599, at *12 (E.D.N.Y. June 6, 2014) (awarding an hourly rate on the high end of the spectrum for the Eastern District, of $400 for the two attorneys who litigated the case based on the "skill, quality, and experience of the attorneys, as well as the degree of specialization required by this case.").  At least to some extent, then, it appears that the second and third factors do not weigh strongly in favor of a higher than usual hourly rate. On the other hand, and as discussed below, a significant level of expertise in a narrow area of practice is required to prosecute a *qui tam* action.

Notwithstanding the skill and reputation of plaintiffs' counsel, their "customary rate" of $650 is significantly higher than the upper limit of the usual range for this District, where rates higher than $350 per hour are generally reserved for the unusually expert litigation or other special circumstances.  *See Favors v. Cuomo,* ---F.Supp.2d ---, 2014 WL 4065100, at *31 (E.D.N.Y.  Aug. 14, 2014) (reducing hourly rate of partner in Section 1983 case brought by registered voters challenging constitutionality of state's congressional redistricting from $600 to $400); *Hilton v. Int'l Perfume Palace, Inc*., No. 12-CV-5074, 2013 WL 5676582, at *11 (E.D.N.Y. Oct. 17, 2013) (in trademark, trade dress and patent infringement action involving Paris Hilton fragrances, court reduced hourly rate of partners from $645 to $450); *Leser v. U.S. Bank Nat'l Assn.*, No. 09-CV-2362, 2013 WL 1952306, at *10-11 (E.D.N.Y.  May 10, 2013) (hourly rate of lead counsel, senior litigator with 28 years of experience at major firm, in

15

complex commercial matter involving real estate loan development projects and guaranties and breach of contract claims reduced from $790 to $425; senior associate rate reduced from $530 to $275); *Manzo v. Sovereign Motor Cars, Ltd*., No. 08 Civ. 1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (awarding, in a Title VII case, $480 per hour to a litigator with thirty years of experience because, though the rate was "at the upper end of the range typically awarded in this district, [the attorney] was brought in to try the case, [and] his trial skills may well be the reason for the favorable jury award," and awarding hourly rates of $360 and $300, respectively, to attorneys with nineteen and eleven years of experience); *Hugee v. Kimso*, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) (noting that "[t]he highest rates in this district [of $350-450 per hour] are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields" (collecting cases)).

Having reviewed the billing records and the declarations in the context of the case law in this District, the Court finds that the proposed attorney billing rates exceed those found acceptable. Initially, the Court acknowledges that *qui tam* litigation under the False Claims Act is a specialized area of law with which only a small number of practitioners are familiar. Likewise, such practice requires knowledge of procedural rules which do not apply in other types of litigation. However, this case is not so unusual or complex as to warrant applying what amounts to higher out-of-district rates sought by the Relator here. *See 246 Sears Road Corp. v. Exxon Mobil Corp.*, No. 09 Civ. 889, 2013 WL 4506973, at *11 (E.D.N.Y. Aug. 22, 2013) (awarding a $425 hourly rate for a partner with over thirty years of experience in a Rule 37 sanctions motion filed in a long-running complex commercial litigation); *Leser v. U.S. Bank Nat'l Ass'n*, No. 09 Civ. 2362, 2013 WL 1952306, at *10 (E.D.N.Y. May 10, 2013) (awarding

16

$400 per hour for partner at large firm who had 18 years' experience in complex commercial litigation); *Barkley v. United Homes, LLC,* Nos. 04 Civ. 875, 05 Civ. 187, 05 Civ. 4386, 05 Civ. 5302, 05 Civ. 5362, 05 Civ. 5697, 2012 WL 3095526, at *3-8 (E.D.N.Y. July 30, 2012) (awarding $400 per hour for partner with twenty years of experience and $450 per hour for partner with almost forty years of experience, explaining that experience of attorneys and complexity of the litigation warranted award at the high end of the range for this District); *Libaire v. Kaplan*, No. 06 Civ. 1500, 2011 WL 7114006, at *4 (E.D.N.Y. June 17, 2011) (awarding four senior attorneys hourly rates ranging from $450 to $475 in a complex commercial litigation matter), *adopted as modified by* 2012 WL 273080 (E.D.N.Y. Jan. 30, 2012).

Having considered all the factors, the Court recommends reducing the hourly rate of Robert Sadowski to $450 per hour for 2010, $500 per hour for 2011, $550 for 2012 and $600 for 2013 to the present.[1]  Significantly, Attorney Sadowski affirms that although his current hourly billing rate is $850, "the bulk of my time was billed at $575 per hour."  Sadowski Decl. ¶ 7. While the reduced rates are at the high end of the spectrum for the Eastern District, they reflect the skill, quality, and experience of the attorney, as well as the degree of specialization required by this case.

Attorney Raphael Katz's rate is reduced to $250 per hour for 2010, $275 per hour for 2011, $325 per hour for 2012 and $375 per hour for 2013 to the present.  The Court notes that Mr. Katz was admitted to practice in 2006, so that he was a fourth year associate when assigned

---

[1]       Although some of the Plaintiffs' supporting declarations lump the hourly rate together for the period 2011-2014 (as does the Defendant's motion papers), the Court believes that utilizing the rates charged for the individual years from 2010 to 2013+ yields more accurate and reliable information.

to this case which was filed in October 2010.[2]  The Court also takes into consideration Attorney

Katz's declaration that his current hourly rate is $600, but "throughout most of this litigation, my

hourly rate was $350 per hour."  *See* May 20, 2014 Declaration of Raphael Katz, Esq. in Support

of Relator's Mot. for Attys' Fees ("Katz Decl.") ¶ 7.

The Court further finds Attorney Andrea Fischer's rate of $750 per hour is excessive in

light of the straightforward nature of the work performed by Ms. Fischer - - and is beyond the

acceptable outer limit of reasonable rates.  According to Robert Sadowski, his partner Ms.

Fischer "performed legal tasks in the settlement agreement and post settlement agreement phases

of this litigation."  Sadowski Decl. ¶ 13.  The record is clear that Attorney Fischer did not

perform any of the substantive work concerning the underlying claims asserted in the Complaint.

In fact, Attorney Sadowski states that he and Attorney Katz commenced this *qui tam* action on

behalf of the United States, the State of New York, and the Relator.  *Id.* ¶ 3.  Attorney Sadowski

points out that

> [b]oth Mr. Katz and I provided substantive time and resources to
> investigating, drafting, filing and pursuing the instant litigation.
> We performed the bulk of our work while the matter was under
> seal.  I performed legal tasks more suited to a senior partner, while
> Mr. Katz performed the day-to-day litigation tasks.

*Id.* ¶ 10.  It is clear to the Court from the billing records and declarations that Attorney Fischer's

work here encompassed commenting on the settlement agreement and preparing the Relator's

Motion for Attorneys' Fees and Expenses, including her own Declaration.  In her Declaration,

---

[2]     The Court points out that none of the Declarations submitted in support of this fee
application set forth the date of law school graduation of the respective attorney, nor the date of
his/her admission to the Bar.  Nor does this information appear on the law firm's website.  *See*
www.sflawgroup.com.  The Court consulted the Martindale-Hubbell electronic legal directory to
obtain this information.  *See* http://www.martindale.com.

Attorney Fischer states the following:

> 7.      This is the first motion we have ever been compelled to make regarding our attorneys' fees and costs in a *qui tam* matter.

> 8.      My qualifications for negotiating the fees and the drafting of the instant Motion are that I handled bankruptcy fee applications for three firms with which I was affiliated, as both an associate and partner.  As counsel to the debtor or creditors committee in many cases, fee applications had to be submitted to the court for review and payment on a regular basis.  As a result, I have a particular expertise in the fee area.

July 11, 2014 Declaration of Andrea Fischer in Support of Relator's Mot. for Attys' Fees ("Fischer Decl.") ¶¶ 7, 8.  The Court does not doubt counsel's representation of her expertise in fee applications.  And it is well-settled that a party may be compensated for the expense of making a fee application.  *See Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*, No. 11-CV-3252, 2013 WL 403-9370, at *3 (E.D.N.Y.  Aug. 7, 2013) (citing *Libaire*, 2011 WL 711-4006, at*8).  Notwithstanding that fact, preparation of a fee application (and opposing an adversary's cross-motion for fees) does not provide a basis to bump up counsel's hourly rate outside the norm of billing rates in this District for such work, particularly when the fee application involved none of the asserted complex issues handled in the underlying *qui tam* action itself.  The Court is also aware that "[c]ourts have usually limited fee application awards to an amount substantially less than the fees awarded on the main claim." *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp.2d 510, 525 (S.D.N.Y. 2002).  However, it is also significant to the Court that the fees requested here not only involve the fee application, but also the Relator's opposition to Defendant's cross-motion .  Taking all of these factors into account, the Court is reducing the hourly billing rate for Attorney Fischer's work in this matter to $375

per hour.

Although Attorneys Robert Sadowski, Raphael Katz, and Andrea Fischer are licensed in the State of New York and admitted to practice in the Eastern District of New York, Attorney Audrey Hildes Schechter, who performed most of the post-settlement motion practice, is neither licensed in New York nor admitted in this District.  *See* Schechter Decl. ¶¶ 2-3.  Rather, Attorney Schechter has been licensed to practice law in Florida since 1992.  *Id*.[3]  Although it appears that Attorney Schechter primarily practices in Florida, and has recently litigated a case in the Middle District of Florida, *see id.* ¶ 5, the Court will not deny a request for attorney's fees simply because an out-of-state attorney performed work on the case*.  See e.g., Simmons*, 575 F.3d 170 (granting attorneys' fees to out-of-district attorneys); *Barkley*, 2012 WL 3095526, at *8 (same).

The Second Circuit addressed the issue of whether the presumptively reasonable fee should be evaluated on the basis of the rates prevailing in the forum district, or in the district in which much of the work was performed.  *See Simmons*, 575 F.3d 170.  However, that is not the precise contour of the issue presented here.  *Id*.  In *Simmons*, out-of-district lawyers sought their regular rates in districts where the prevailing rates were significantly lower.  *See generally id.* The court in *Simmons* found that, in order to overcome the presumption in favor of the forum

---

[3]     The Court notes that in her Declaration [DE 30-1], Attorney Fischer states that Attorney Schechter was admitted to the New York bar, but has been practicing in Florida for over 20 years "and as such, let her New York bar admission lapse."  Fischer Decl. ¶ 13.  Attorney Schechter, on the other hand, states that she was admitted to the bar of the State of Florida in 1992. Schechter Decl. ¶ 2 [DE 30-3].  She goes on to note that "I was previously admitted to the bar of the State of New York, but resigned from that bar, as I had been practicing exclusively in Florida."  *Id*.  Attorney Schechter lists herself as "of counsel" to the Sadowski Fischer firm.  *Id*. ¶ 1.  She dated her Declaration "July 11, 2014 Belleair, Florida."  It appears from her Declaration, then, that Attorney Schechter continues to reside in Florida and practice law there. DE 30-3.

20

rule, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at 175. Thus, the Second Circuit has applied the forum rule to *limit* fees for out-of-state attorneys with higher rates, unless counsel can prove he or she was selected in order to produce a substantially better result for the client. *See id.*

However, the Second Circuit "has yet to address the thorny issue of using host district fees to *increase* the presumptively reasonable fee above the amount that counsel would customarily receive from 'paying clients' back home." *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 3602, 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010). In *AOL Time Warner*, a shareholder derivative action, the court analyzed this difficult issue. *See generally id.* The parties in *AOL Time Warner* settled the action in 2006, and out-of-district counsel moved for attorney's fees. *See id.* The court noted that the hourly rates sought by the four lead counsel "substantially exceed the customary amounts charged in their home states [of Delaware, Pennsylvania, and Arkansas], even within the top decile." *Id.* at *14. However, the Court also found that the complexity of the case demanded exceptionally able counsel. *Id.* at *20. Ultimately, the Court awarded the out-of-state attorneys a presumptively reasonable fee based on the higher rates. *Id.*

Because Relator's counsel has provided very little information regarding Attorney Schechter's background, other than that she has been "practicing exclusively in Florida," Schechter Decl. ¶ 2, and most recently litigated a case in the Middle District of Florida, *see* Schechter Decl. ¶ 5, the Court will assume that Attorney Schechter's "home district" is the Middle District of Florida. *See* fn. 1 *supra*. Thus, the Court examines the general prevailing rates for attorneys in that federal district. The Court is also mindful here that the work performed

by Attorney Schechter did not include any hours spent on the more complex *qui tam* issues underlying the Complaint.  Again, as in Attorney Fischer's billings, the time incurred was exclusively for work done on the fee application and in opposing the cross-motion for fees.

In light of Attorney Schechter's Belleair location, the Court looks at reasonable hourly rates awarded by courts in the Tampa Division of the Middle District of Florida.  In *State Nat. Ins. Co. v. White*, No. 8:10–cv–894–T–27TBM, 2012 WL 6021462, at *4 (M.D. Fla. Oct. 26, 2012), *adopted as modified by* 2012 WL 6025761 (M.D. Fla. Dec. 4, 2012), the court awarded hourly rates of $425 and $450 for two senior attorneys, respectively, and $150 for a junior associate in a "moderately complex first party insurance litigation requiring above average expertise in the prosecution of such disputes and in contract interpretation, as well as practice in federal court."  In *Sure Fill & Seal, Inc. v. GFF, Inc*., No. 8:08–CV–882–T–17TGW, 2012 WL 5227676 (M.D. Fla. Apr. 2, 2012), *adopted by* 2012 WL 5199670 (M.D. Fla. Oct. 22, 2012), the court reviewed a fee application in a breach of contract action, which also involved a motion to enforce a settlement agreement reached prior to trial.  The court in *Sure Fill & Seal* granted the following hourly billing rates for work performed in 2010 and 2011:  an hourly rate ranging from $325 - $335 for an AV-rated attorney with over 30 years of experience; $325 an hour for a partner with approximately 24 years of experience; $175 an hour for a sixth-year associate.  2012 WL 5227676, at *12-13; *see also Rynd v. National Mut. Fire Ins. Co.*, No. No. 8:09–CV–1556–T–27TGW, 2012 WL 939387 (M.D. Fla. Jan. 25, 2012), *adopted by* 2012 WL 939247 (M.D. Fla. Mar. 20, 2012) (awarding partner with 14 years of experience an hourly rate of $425, $275 for an attorney with 12 years of experience, and $200 for a fifth-year associate in a breach of insurance contract action).  More recently, in *Spellberg v. New York Life Ins. Co.*, No. 2:13–cv–691–FtM–29CM, 2015 WL 164193, at *2 (M.D. Fla. Jan. 13, 2015), a court sitting in the Middle

22

District of Florida, Fort Myers Division, found reasonable a $425 hourly rate for an attorney with nearly 30 years of experience in commercial litigation and $175 for a junior associate who also worked on the matter.  2015 WL 164193, at *2.[4]

Based on the foregoing information, and in light of the straightforward nature of the work performed by Attorney Schechter, namely, the instant fee application, the Court recommends reducing Attorney Schechter's rate from the requested $650 per hour to $350 per hour.  Relator's counsel has not sufficiently shown any complexity in the fee application or other factors related to Attorney Schechter's work which would warrant an hourly rate of $650.  Further, a rate of $350 falls within the reasonable hourly rates for experienced attorneys in both the Eastern District of New York and the Middle District of Florida.  Relator's counsel has properly documented Attorney Schechter's time records.  As such, although Attorney Schechter is not admitted to practice in this District, the Court will permit Relator's counsel to recover attorney's fees for work done by Attorney Schechter at the hourly rate of $350.

## B.     Reasonableness of Hours Expended

Defendant contends that most of the Relator's time records consist of vague entries, block billing, and excessive billing.  *See* Def.'s Opp'n at 13-20.  Defendant maintains that 80.1 hours of the 323.95 hours expended on this matter consist of vague entries.  Sherrin Decl.¶ 40.  For example, Defendant argues that numerous entries contain generic phrases such as "reviewing documents," "research," and "drafting complaint."  *Id.*

---

[4]      The Court points out that in *Spellberg*, the court applied a 10% discount to the $425 and $175 hourly rates found reasonable, consistent with the client's billing practices.  2015 WL 164193, at *2.  The Court further held that these discounted rates, in any event, were more consistent with local market rates approved by other courts located in the Fort Myers Division. *Id.*

The Court points out that "[a]ttorneys…are not required to provide the Court with a detailed accounting of each minute spent performing a task in the case." *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06 Civ. 5487, 2008 WL 4453221, at *10 (E.D.N.Y. Sept. 30, 2008). "Rather, the records produced should be specific enough to assess the amount of work performed." *Id.* (citing *Hensley*, 461 U.S. at 437 n. 12). The Court has reviewed the time records and finds that in the majority of entries made by Attorneys Sadowski, Fischer and Schecter, the details provided are sufficient (*e.g.*, nature of the motion that is being drafted, the subject of the communications, the nature of the meeting which is being billed. *See Microban Products Co. v. API Industries, Inc.*, No. 14 Civ. 41, 2014 U.S. Dist. LEXIS 92704, at *12 (S.D.N.Y. July 7, 2014) (counsel need only "identify the general subject matter of [their] time expenditures.") (quoting *Hensley*, 461 U.S. at 437 n. 12). However, the Court also notes that a small number of the time entries entered by Attorney Katz are vague. For example, in three entries for 2010, Attorney Katz has listed one word - - "research" - - as the entire description (*see* 6/28/10, 6/29/10, 7/1/10), with no explanation or differentiation of what research was being done. These examples are limited and the Court juxtaposes these entries with other entries in which Attorney Katz *did* explain the subject matter of the research. *Compare, Rates Technology, Inc. v. Mediatrix Telecom, Inc.,* No. 05-CV-2755, 2011 WL 1322520, at *5 (E.D.N.Y. Mar. 31, 2011) (court reduced percentage of legal fees where it found billing records replete with vague entries such as "work on motions," pointing out specific billing of 6.6 hours for "work on filings").

Next, Defendant contends that many of Relator's time entries consist of block-billing. *See* Sherrin Decl. ¶ 41. Specifically, Defendant argues that Relator's counsel has submitted 92.7 hours of entries in this manner. *Id.* For example, Defendant points to a July 22, 2010 entry from

Attorney Raphael Katz which states "Research; drafting complaint," with 1.25 hours entered. Sherrin Decl. Ex. P [DE 29-16]. Another example provided by Defendant is an October 8, 2010 entry, again by Raphael Katz which reads: "Prepare for EDNY meeting; edit complaint; review documents; attend meeting," for a non-particularized total of 4 hours. *Id.*

Block-billing is defined as "the lumping together of discrete tasks with others that are not clearly defined, which 'makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity.'" *Penberg v. HealthBridge Mgmt.*, No. 08 Civ. 1534, 2011 WL 1100103, at *9 (E.D.N.Y. Mar. 22, 2011) (quoting *Ass'n of Holocaust Victims v. Bank Austria*, No. 04 Civ. 3600, 2005 WL 3099592, at *5 n.9 (S.D.N.Y. Nov. 17, 2005)). Relator's counsel argues that the majority of the entries submitted do not constitute block-billing. *See* Reply. Memo. at 10. Rather, Relator's attorneys assert that "many of the tasks such as research and drafting, were so interrelated that breaking them down separately would have been inefficient." *Id.* Defendant has cited several examples of entries which could have been further divided into multiple entries. One of several examples of block-billing can be seen in an October 1, 2010 entry for which Attorney Raphael Katz billed 2.4 hours. Sherrin Decl. Ex. P. In that entry, Attorney Katz states: "Review complaint and finalize; meeting with PK at USAO EDNY to discuss case." *Id.*; *see Penberg*, 2011 WL 1199193, at *9 ("The majority of counsel's time entries contain more than one task and many contain multiple, unrelated tasks…that do not appear to have been performed in one block of time."). In reviewing the billing sheets, the Court finds that the block billing which does occur is limited to Attorney Katz's entries, and even in that regard, those entries are in the minority.

Defendant also argues that Relator's counsels' time records reflect excessive billing. Having reviewed the time records for both the underlying litigation and the instant application

for fees, and considered the complexity of the case, as well as the fact that there were no adversarial proceedings such as discovery, and court hearings, nor opposed motions until the instant fees application, the Court agrees to an extent with Defendant.  One example of excessive billing is illustrated by the 79 hours billed for drafting the complaint.[5]  Sherrin Decl. Ex. J [DE 29-10].  Another example of excessive billing is evident in the 70 hours billed for the drafting of the instant fee application, with the majority of the work being performed by partners and of counsel. *See* Fischer Decl., Ex C. The Court questions the necessity of the number of declarations prepared when it seems reasonable that Attorney Fischer could have included much of the essential information about her partners in her own Declaration.  However, the Court is also cognizant that the fee application does not stand alone from the perspective that the Relator also had to address the cross-motion filed by Defendant's counsel.   Having said that, the Court finds that an application for fees incurred in making the fee application which seeks in excess of $48,000 (*i.e.*, time and expenses incurred between the settlement and July 10, 2014) pushes beyond the bounds of reasonableness.

As a general matter, the Court may reduce any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  For example, the Court can make reductions where the stated number of hours is greater than what should have been required for the work produced.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002); *Nat'l Audubon Soc'y, Inc. v. Sonopia Corp.*, No. 09 Civ. 975 (PGG) (FM), 2010 U.S. Dist. LEXIS 110558, 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010).  As the Second Circuit recently observed in *Millea*, this is "a permissible consideration" and one that the judge is

---

[5]     Even this sum is difficult to parse since any number of the billing entries contain the language "Research; drafting Complaint."

particularly suited to make.  658 F.3d at 167.  "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming the fat from a fee application." *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In Re Agent Orange*, 818 F.2d 226, 237 (2d Cir. 1987)); *Penberg*, 2011 WL 1100103, at *9 ) (quoting *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d at 1146 (2d Cir. 1983)); *Simmonds v. N.Y.C. Dep't of Corr.*, No. 06 Civ. 5298 (NRB), 2008 U.S. Dist. LEXIS 74539, 2008 WL 4303474, at *7-8 (S.D.N.Y. Sept. 16, 2008).

Accordingly, in light of the excessive billing here, the Court finds that a 10% reduction in counsels' legal fees for the underlying litigation and a 20% reduction for the fee application is appropriate. *See Rates Technology*, 2011 WL 1322520, at *5 (citing *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

### C.     Fee Calculation

Based on the foregoing analysis, the Court awards the following attorneys' fees:

**Table 1**:  **Fees for Underlying Litigation**

| Attorney | 2010 Hours Awarded | 2010 Rate Awarded | 2011 Hours Awarded | 2011 Rate Awarded | 2012 Hours Awarded | 2012 Rate Awarded | 2013+ Hours Awarded | 2013+ Rate Awarded | Overall Fee Awarded |
|---|---|---|---|---|---|---|---|---|---|
| Robert Sadowski | 56.9 | $450 | 2.4 | $500 | 1.6 | $550 | 8.5 | $600 | |
| | | $25,605 | | $1,200 | | $800 | | $5,100 | $32,785 |
| Raphael Katz | 133.4 | $250 | 3.3 | $275 | 3.7 | $325 | 3.2 | $375 | |
| | | $33,350 | | $907.50 | | $1,202.50 | | $1,200 | $36,660 |
| Andrea Fischer | | | | | | | 2.9 | $375 | $1,087.50 |
| Audrey Schechter | | | | | | | 34.3 | $350 | $12,005 |

**Subtotal:**          **$82,537.50**
**(minus 10%):**       **--  8,253.75**
**TOTAL:**             **$74,283.75**

**Table 2**:   __Fees Incurred for Attorneys' Fee Application__

| Attorney | 2010 Hours Awarded | 2010 Rate Awarded | 2011 Hours Awarded | 2011 Rate Awarded | 2012 Hours Awarded | 2012 Rate Awarded | 2013+ Hours Awarded | 2013+ Rate Awarded | Overall Fee Awarded |
|---|---|---|---|---|---|---|---|---|---|
| Robert Sadowski | | | | | | | 7.8 | $600 | $3,302.30 |
| Raphael Katz | | | | | | | 0.7 | $375 | $262.50 |
| Andrea Fischer | | | | | | | 42.8 | $375 | $16,050 |
| Audrey Schechter | | | | | | | 13.1 | $350 | $4,585 |

|  |  |
|---|---|
| __Subtotal:__ | **$24,199.80** |
| __Less:__ | **$760.00**[6] |
| **(minus 20%):** | **4,687.96** |
| **TOTAL:** | **18,751.84** |

|  |  |
|---|---|
| __GRAND TOTAL:__ | __$ 93,035.59__ |

After reducing the $82,537.50 lodestar figure by ten percent, the Court arrives at an attorneys' fee award for the underlying litigation of $74,283.75.  Likewise, after reducing the $24,199.80 award associated with the fee application by twenty percent (and subtracting the $760 erroneously billed), the Court arrives at an award for the fee application of $18,751.84.  Thus, the Court recommends awarding Relator's counsel a grand total of $93,035.59 in attorneys' fees.

Defendant argues that Relator achieved limited success and therefore, the fee awarded should be modified.  Indeed, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)).  Relator's counsel was successful in obtaining a settlement which included a

---

[6]     To account for Attorney Katz' acknowledged mistake in billing $760 to the wrong client. *See* Reply Mem. at 12.

reimbursement of $165,000 to the United States.  Although the settlement amount is not huge, it is significant.  The recommended fee award is less than the amount that was recovered in the case, but is greater than the one-third of recovery that is usually considered proportional.  That is not, however, a basis for reducing the award.  The Second Circuit has noted that the judgment amount and the fee award need not necessarily be proportional, for "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery."  *Millea*, 658 F.3d at 169 (holding in a Title VII case that the district court may not disregard the lodestar method entirely in favor of a calculation proportional to the damages award); *see also U.S. ex rel. Feldman v. Van Gorp*, No. 03 civ. 8135, 2011 WL 651829, at *5 (S.D.N.Y. Feb. 9, 2011) (approving a fee award in excess of $700,000 in a case brought under the False Claims Act where $887,000 was recovered).

For these reasons, the Court concludes that no adjustment to the fees calculated above is warranted because of the results obtained in this case.

### D.    Costs

Relator's counsel requests $2,015.74 in costs and disbursements incurred in relation to the underlying litigation as well as the fee application.  Sherrin Sur-Decl. ¶ 2.  In its opposition, Defendant noted that the "cost entries are non-descriptive and unsupported by any receipts or other documentary evidence."  Def.'s Opp'n at 23.  Although Defendant was initially correct, Relator's counsel subsequently submitted a supplemental declaration with receipts and invoices, pursuant to this Court's Order, which confirm the requested amount.  Supp. Decl. of Andrea Fischer ("Fischer Supp. Decl.") [DE 38].  As noted, in any action in which a *qui tam* plaintiff receives an award, "such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.  All such

29

expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1). The Court here finds that the Relator has provided sufficient back-up documentation to warrant an award of costs. Therefore, the Court respectfully recommends to Judge Wexler that Relator be awarded $2,015.74 in costs.

     **E.**      **Defendant's Cross-Motion for Attorney Fees**

     Defendant seeks reimbursement of attorneys' fees related to the present motion. While Defendant recognizes that Relator's attorneys are entitled to reasonable fees under the statute, Defendant argues that the instant fee application, which Defendant was forced to oppose, was made necessary by the failure of Relator to demonstrate reasonable fees and to "provide supplemental details and not vague, unspecific, block-billed entries with obvious unrelated entries." *See* Def.'s Opp'n at 26. While Defendant fails to cite any case law or statute to support its own fee application, the Court is aware that it may award sanctions against an attorney pursuant to 28 U.S.C. § 1927, which prohibits an attorney from "unreasonably and vexatiously" multiplying the proceedings. However, these sanctions may be awarded only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and where the court "find[s] bad faith." *Johnson ex rel. United States v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (citation and internal quotation marks omitted). Defendant has failed to show that the actions of Relator's attorneys were undertaken in bad faith. *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2012 U.S. Dist. LEXIS 37883, 2012 WL 948661, at *2 (E.D.N.Y. Mar. 19, 2012) (observing that "poor legal judgment" does not constitute bad faith for purposes of Section 1927 (quoting *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000)) (internal quotation marks omitted)); *Van Eck Assocs., Inc. v. Reynolds Philippine Corp.*, No. 98 Civ. 5882, 1999 WL 562005, at *1

(S.D.N.Y. Aug. 2, 1999) (observing that mere "careless" conduct "does not rise to the level of bad faith required by the Court to . . . levy sanctions pursuant to 28 U.S.C. § 1927"). The Court finds unpersuasive Defendant's argument to the effect that had the Relator only done what Defendant wanted Relator to do regarding the manner in which the fee application was presented, Defendant's opposition would not have been necessary. Likewise, the Court finds it somewhat ironic that Defendant believes its own request for $29,525.00 in fees for opposing the motion is eminently reasonable. For the foregoing reasons, the Court recommends to Judge Wexler that the Defendant's request for attorneys' fees be DENIED.

**V.     CONCLUSION**

Based on the foregoing findings, the Court respectfully recommends to Judge Wexler that Relator's motion for attorneys' fees and costs be GRANTED to the extent set forth in this Report and Recommendation. The Court further recommends to Judge Wexler that Defendant Acupath's cross-motion for attorneys' fees be DENIED.


Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Leonard D. Wexler, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Wexler prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 88 L. Ed. 2d 435

(1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883, 118 S.

Ct. 211, 139 L. Ed. 2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated: Central Islip, New York
      February 27, 2015

                       /s/ A. Kathleen Tomlinson

                       A. KATHLEEN TOMLINSON
                       United States Magistrate Judge